## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VICTORIA LAMARCA,                )
                                 )
            Plaintiff,           )
                                 )
    v.                           )       Civil Action No. 09-203
                                 )       Judge Nora Barry Fischer
VERIZON PENNSYLVANIA, INC.,      )
                                 )
            Defendant.           )

## MEMORANDUM OPINION

### I.    INTRODUCTION

This action involves allegations by Plaintiff Victoria Lamarca ("Plaintiff" or "Lamarca") that

her current employer, Defendant Verizon Pennsylvania, Inc., ("Defendant" or "Verizon") retaliated

against her in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2610 *et. seq*.

In her Complaint, Plaintiff avers that Defendant retaliated against her for taking FMLA leave by

assigning her a van rather than a bucket truck in 2002 and 2006 and by reclassifying her position in

2007.  (Docket No. 1).  Presently before the Court is Defendant's Motion for Summary Judgment.

(Docket No. 33).  Defendant first argues that Plaintiff's claims related to Defendant's assignment

of a van rather than a bucket truck to her are barred by the applicable statute of limitations.  (Docket

No. 34).  Defendant further maintains that, as to all of Plaintiff's claims, she has failed to present a

prima  facie  case  of  retaliation  and  has  not  demonstrated  that  Defendant's  proffered

nondiscriminatory reasons for its actions were pretextual.  (*Id*.).  Defendant's Motion has been fully

briefed by the parties in accordance with Local Rule 56, the Court heard oral argument from counsel

at a hearing on April 15, 2010, and accepted supplemental briefing thereafter. (Docket Nos. 33, 34, 35, 36, 38, 39, 40, 44, 45, 47, 48, 49). After careful consideration of the record and the parties' arguments, and for the following reasons, Defendant's motion [33] is granted.

## II.     FACTUAL BACKGROUND

The following facts were compiled from the parties' submissions pursuant to Local Rule 56. Unless otherwise specified, the facts of record are uncontested. Viewed in the light most favorable to Plaintiff, they are as follows.

### A.     *Plaintiff's Employment History and Cable Splicer Duties*

"Plaintiff began her employment with Bell of Pennsylvania, a predecessor to Verizon, in 1978." (Docket No. 35 at ¶ 1; Docket No. 39 at ¶ 1). "Plaintiff was hired as a Production Splicer and worked out of the Company garage located at 2806 Broadway Boulevard, Monroeville, Pennsylvania." (Docket No. 35 at ¶ 2; Docket No. 39 at ¶ 2). "In 2002, Plaintiff was employed by Verizon as a Cable Splicing Technician ('Cable Splicer')." (Docket No. 35 at ¶ 3; Docket No. 39 at ¶ 3). "As a Cable Splicer, Plaintiff worked outside restoring telephone service to Verizon customers. Plaintiff's job duties included working on aerial and underground lines to restore/repair telephone dial tones." (Docket No. 35 at ¶ 4; Docket No. 39 at ¶ 4). "Plaintiff also repaired wiring and associated equipment for Verizon customers." (Docket No. 35 at ¶ 5; Docket No. 39 at ¶ 5). "Cable Splicers travel in Company-provided vehicles between various locations and perform outdoor work, which among other things, requires them to climb ladders and telephone poles." (Docket No. 35 at ¶ 6; Docket No. 39 at ¶ 6).

The vehicles are owned by Verizon and are not the employee's personal property. (Docket No. 35 at ¶ 15; Docket No. 39 at ¶ 15). Cable Splicers are assigned bucket trucks or vans, for use

in performance of these duties.  (Docket No. 35 at ¶¶ 16-17; Docket No. 39 at ¶¶ 16-17).  Verizon does not have a formal rule or policy requiring that a Cable Splicer be assigned a bucket truck. (Docket No. 35 at ¶ 16; Docket No. 39 at ¶ 16).  However, Plaintiff testified that the majority of Cable Splicers working out of the Monroeville garage were assigned bucket trucks.  (Docket No. 35 at ¶ 17; Docket No. 39 at ¶ 17).  She further testified that she could perform her job duties with a van and a ladder, although using a van and a ladder as opposed to a bucket truck made it take longer to perform certain parts of her job. (Docket No. 35 at ¶ 19; Docket No. 39 at ¶ 19).

 B. *Plaintiff's Return from Leave in 2002: First Bucket Truck Incident*

"In 2002, Susan Baker was Plaintiff's supervisor."  (Docket No. 35 at ¶ 7; Docket No. 39 at ¶ 7).  "Plaintiff testified that in 2002 she 'was off for a very long time . . . close to a year' for knee and foot surgeries."  (Docket No. 35 at ¶ 8; Docket No. 39 at ¶ 8).  "Upon her return to work, Plaintiff was assigned a van for a period of time ... and then [later] reassigned a bucket truck." (Docket No. 35 at ¶ 9; Docket No. 39 at ¶ 9).  Plaintiff could not recall how long she was without a bucket truck.  (*Id.*).

 C. *Plaintiff's Return from Leave in 2006: Second Bucket Truck Incident*[1]

---

[1] The parties dispute the date of the alleged second bucket truck incident; Plaintiff contends that the event occurred on August 28, 2006, while Defendant maintains that said event occurred on August 28, 2005.  (Docket Nos. 48, 49).  Because Plaintiff concedes that any discrete claims arising from an event that occurred on either date would be time-barred, resolution of this dispute is not material to a decision on Defendant's motion for summary judgment.  (*See* Docket No. 48). However, upon consideration of the present record, including counsel's assertions at oral argument and the parties' supplemental briefs, the Court finds that the correct date for this incident is August 28, 2006.  Although Plaintiff referred to the incident as having occurred on August 28, 2005 at times during her deposition (Docket No. 36-1, Pl. Depo at 78, 93, 96) and, through counsel, admitted that it occurred in 2005 in her response to Defendant's Concise Statement of Material Facts (Docket No. 39 at ¶¶ 10, 12), her pleadings and the other evidence of record demonstrate that the correct date is August 28, 2006.  Particularly, Plaintiff's Complaint alleges bucket truck incidents in only 2002 and

On July 2, 2006, Plaintiff "sustained a work injury while descending the back of a bucket truck." (Docket No. at 39 at ¶ 42; Docket No. 45 at ¶ 42). She returned to work full duty following this injury on August 28, 2006. (Docket No. at 39 at ¶ 43; Docket No. 45 at ¶ 43). "At that time, she was informed by her supervisor that her bucket truck had been removed, and would not be reassigned because of safety concerns." (Docket No. at 39 at ¶ 44; Docket No. 45 at ¶ 44; *see also* Docket No. 35 at ¶ 11; Docket No. 39 at ¶ 11).

However, "[o]n the same day that Plaintiff returned to work and was told that she was being assigned a van, Plaintiff informed the Company that she had reinjured her knee and began another medical leave." (Docket No. 35 at ¶ 11; Docket No. 39 at ¶ 11). "As a result, although Plaintiff was assigned a van upon her return to work in [2006], she did not drive it for even a day because she immediately told the Company she had reinjured herself." (Docket No. 35 at ¶ 12; Docket No. 39 at ¶ 12; Docket No. 36-1, Pl's Depo. at 99).

Plaintiff also completed a grievance form on August 28, 2006, which was filed by her union, Local 13000, CWA, AFL-CIO. (Docket No. at 39 at ¶¶ 45-46; Docket No. 45 at ¶¶ 45-46). The "Description of Grievance" marked on the form is "Discrimination/Harrassment [sic]." (Docket No. 40-7). Plaintiff's "Statement" on the grievance form is the following:

> I injured my left knee cap on July 3, 2006. Work Related. Followed all the necessary avenues to be off work - rehabilitation was prescribed by my orthopedic doctor. He released me [to] full duty for Aug. 28[, 2006]. When I entered the garage my supervisor welcomed me back. (Sue Baker). Told me not to "CAT" in! I gave her my

---

2006 (Docket No. 1 at ¶¶ 26-31), other parts of Plaintiff's deposition testimony refer to this incident having occurred on August 28, 2006 (Docket No. 36-1, Pl. Depo at 99), a grievance filed after this incident denotes August 28, 2006 as the date of the incident (Docket No. 40-7), and a summary chart of Plaintiff's work attendance presented by Defendant shows that she was absent from work from August through the remainder of 2006 (Docket No. 36-2 at 9).

doctor's excuse to report back "full duty"! In the conversation I asked about my truck I had assigned to me before I left. She said "it was relocated." Told me I'd be using a van. All my stuff she pulled off was up [at] MacBeth and in the ladies room. This happened to me in 2002 after knee surgery. The union fought to get me a bucket.

Kevin Carter (Splicer) was off for months with a knee problem. He came back to his truck. No van.

Larry Nelson (CIRT) was off for awhile. He came back and got a bucket.

This is discrimination and harassment!

I got 28 yrs service and lost a bucket. We got FTTP Splicers with NO service in brand new trucks!

(Docket No. 40-7). Defendant denied her grievance. (Docket No. at 39 at ¶ 47; Docket No. 45 at ¶ 47).

On February 2, 2007, Plaintiff filed a Charge of Discrimination with the EEOC and PHRC related to this incident. (Docket No. at 39 at ¶ 53; Docket No. 45 at ¶ 53). In her EEOC Charge, Plaintiff states that "I believe that [Verizon] discriminated against me because of my gender, female; my disabilities and/or in retaliation for having filed both internal and external (EEOC) charges of discrimination against [Verizon] in violation of Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990." (Docket No. 40-13, *EEOC Charge dated 2/2/07*). Her "grievance concerning the second bucket truck removal was marked as 'pending' until the ruling from the EEOC on [her] second filing was returned." (Docket No. at 39 at ¶ 63; Docket No. 45 at ¶ 63).

As to the Defendant's safety concerns, "[o]n December 22, 2005 and January 18, 2006, Ms. Baker and Union Representative Lisa Fazzini reviewed [Plaintiff's] Personnel File," including all

accidents which Plaintiff sustained during her employ with Defendant. (Docket No. at 39 at ¶¶ 48, 49; Docket No. 45 at ¶¶ 48, 49). "From 1/8/80 through 1996, Ms. LaMarca sustained eight accidents." (Docket No. at 39 at ¶ 50; Docket No. 45 at ¶ 50). "None of those accidents were caused by descending or ascending a bucket truck." (Docket No. at 39 at ¶ 51; Docket No. 45 at ¶ 51). Plaintiff's "only accidents involving a bucket truck occurred on 2/11/04-2/13/04, 11/17/04-12/2/04, and 7/3/06-8/28/06." (Docket No. at 39 at ¶ 52; Docket No. 45 at ¶ 52).

D.    *Same Pay, Same Job, Same Benefits*

Although Plaintiff was assigned a van rather than a bucket truck after her return from leave in both 2002 and 2006, after returning from both leaves, "Verizon reinstated Plaintiff to the same job at the same location with the same pay and same benefits." (Docket No. 35 at ¶ 13; Docket No. 39 at ¶ 13). Specifically, Plaintiff testified:

> Q: During those several years under which you were reporting to Ms. Baker, you took numerous leaves of absence, correct?
> A: Yes.
> Q: And during all but one of those leaves [referring to the time Plaintiff was reclassified as a Maintenance Administrator after five months without being recertified in pole climbing.] Ms. Baker reinstated you to the same job, right?
> A: Yes.
> Q: Same pay?
> A: Yes.
> Q: And same benefits?
> A: Yes.

(Docket No. 36-1, Pl. Depo. at 114).

E.    *Plaintiff's Return from Leave in 2007: Reclassification of her Position from a Cable Splicer to a Maintenance Administrator*

"Plaintiff returned to work from an extended absence in January 2007." (Docket No. 35 at ¶ 21; Docket No. 39 at ¶ 21). Upon her return, Plaintiff was placed on a medically restricted list and

was relegated to light duty. (Docket No. at 39 at ¶¶ 56, 60; Docket No. 45 at ¶¶ 56, 60). She admits that she was paid wages equivalent to her prior wages as a Cable Splicer at that time. (Docket No. 48-1 at 1).

Sometime after her return to work in 2007, "Susan Baker – Plaintiff's supervisor – sent [her] for pole climbing recertification." (Docket No. 35 at ¶ 23; Docket No. 39 at ¶ 23). Pole climbing is an essential part of the job of a Cable Splicer and Defendant has a company policy requiring all Cable Splicers to be recertified in pole climbing after extended absences. Specifically, the policy requires that "[i]f a [Cable] Splicer is off from work for more than 30 days – regardless of the reason – then he or she has to be recertified in pole climbing prior to performing the [Cable] Splicer position." (Docket No. 35 at ¶ 22; Docket No. 39 at ¶ 22). "Plaintiff never passed pole climbing recertification and in fact 'retreated' from the course." (Docket No. 35 at ¶ 24; Docket No. 39 at ¶ 24). Plaintiff testified that she has not been recertified in pole climbing and explained that "I just couldn't do it. I got too fat from being inside. I couldn't climb." (Docket No. 36-1, Pl. Depo. at 103-104). Plaintiff further explained the following:

> Defense counsel: Since the time that you left [training] because you decided you were too heavy to do it, have you sought the opportunity to be recertified in pole climbing?
>
> Plaintiff: I can't lose weight.
>
> Defense counsel: So the reason you've not been recertified at pole climbing –
>
> Plaintiff: I can't lose weight.
>
> Defense counsel: -- is because you're too heavy?
>
> Plaintiff: I deem myself unsafe to climb. I'm just too fat. It's unsafe. That's a lot of weight to hold.

Defense counsel: That's the reason that you've not been recertified at pole climbing?

Plaintiff: Yeah. That's the truth, yes.

Defense counsel: That's the reason that you can't work as a splicer, right?

Plaintiff: I can do splicing work. I just can't climb because I'm too fat, too heavy.

Defense counsel: That's part of the splicing?

Plaintiff: It's part of the job description, yes, it is.

Defense counsel: So the fact that you're not currently working as a splicer is the result of your weight and your self-determination that you can't climb poles?

Plaintiff: Right.

(Docket No. 36-1, Pl. Depo. at 159-60).

Plaintiff was also sent by Defendant to its Pittsburgh office for testing in May of 2007, although she was not advised of the purpose for her trip.[2]  (Docket No. 48-1 at 1).  Over a two day

---

[2]

Plaintiff has submitted a document titled "affidavit" in support of her supplemental brief. (Docket No. 48-1).  The document purportedly states that "I, Victoria LaMarca, verify the facts set forth in the foregoing Affidavit are true and correct.  I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A. 4904 relating to unsworn falsification to authorities." (Docket No. 48-1 at 2).  The document is not physically signed by Plaintiff nor notarized as is the common practice.  Instead, it is merely marked as "/s Victoria LaMarca." (*Id.*).  In this Court's estimation, the "affidavit" is not properly submitted under Rule 56(e) of the Federal Rules of Civil Procedure.  Rule 56(e) provides, in pertinent part, that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit."  FED.R.CIV.P. 56(e).  The United States Court of Appeals for the Third Circuit has recognized that an unsworn affidavit may be disregarded by a district court and that the facts set forth in an unsworn affidavit cannot create a genuine issue of material fact sufficient to preclude the entry of summary judgment against a party.  *See Woloszyn v. County of Lawrence*, 396 F.3d 314, 323 (3d Cir. 2005)(citing

period, she was given and passed two exams, UTB and CART-M, qualifying her for a Maintenance Administrator position.  (*Id*.; Docket No. 48-2 at 2; Docket No. 40-12).

Shortly thereafter, "[o]n May 8, 2007, Sue Baker met with Ms. LaMarca and her union representative, Tim Dexter."  (Docket No. at 39 at ¶ 54; Docket No. 45 at ¶ 54).  Plaintiff advised them "that she would be coming off medical restrictions on May 25, 2007."  (Docket No. at 39 at ¶ 56; Docket No. 45 at ¶ 56).  However, she had not passed the required pole climbing certification at that time.  During the meeting, Baker advised Plaintiff that she was being reclassified from a Cable Splicer position and placed in a Maintenance Administrator position effective May 13, 2007.  (Docket No. at 39 at ¶ 55; Docket No. 45 at ¶ 55; Docket No. 35 at ¶ 26; Docket No. 39 at ¶ 26).  In her report, Baker noted that Dexter stated that it was "underhanded" for the company to reclassify Plaintiff and accused Baker of "pushing" the reassignment.   (Docket No. at 39 at ¶ 61; Docket No. 45 at ¶ 61).  She further explained that "[t]here was some discussion about the length of time that [Plaintiff] had known she was placed on the medically restricted list, what the medically restricted policy was, and that this reassignment is not precedent-setting - this is in keeping with the medically restricted policies." (Docket No. at 39 at ¶ 60; Docket No. 45 at ¶ 60).

Defendant has in place a policy governing medical leaves, the Verizon Mid-Atlantic Medically Restricted Policy, effective October 9, 1988.  (Docket No. at 39 at ¶ 57; Docket No. 45

---

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970)).  In addition, to the extent that her unsworn factual assertions contradict her earlier deposition testimony, the Court would also disregard her affidavit under the "sham affidavit doctrine."  *See Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007)(citations omitted)("A sham affidavit cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant.").  Accordingly, given the questionable nature of the form and content of Plaintiff's "affidavit," the Court will not consider the facts set forth therein.  To the extent that said "affidavit" is referenced by the Court, it is used to develop background facts, only.

at ¶ 57).  "The policy covers all regular full time and regular part-time associates effective August 9, 1998 for associates employed by Verizon - Delaware, Maryland, New Jersey, Pennsylvania, Virginia, Washington DC and West Virginia who are represented by the CWA and October 9, 1998 for associates employed by Verizon - Pennsylvania and New Jersey who are represented by IBEW." (Docket No. at 39 at ¶ 58; Docket No. 45 at ¶ 58).  The policy provides, in pertinent part, as follows:

> The supervisor will meet with the employee as soon as possible after receiving notification or confirmation of the restriction from MetLife and explain to him/her the procedures that will be followed to find the employee a suitable indefinite reassignment.
>
> The supervisor will also ask the restricted employee if there are any reasonable accommodations that s/he believes would enable him/her to perform the essential functions of the current job, and to suggest other jobs the employee believes he/she could perform with or without reasonable accommodation.

(Docket No. at 39 at ¶ 59; Docket No. 45 at ¶ 59).

Finally, Plaintiff testified that she believed her reassignment by Baker to the Maintenance Administrator position was the result of Plaintiff "placing charges" against Baker.  (Docket No. at 39 at ¶ 64; Docket No. 45 at ¶ 64).  She further states in her unsworn and unsigned affidavit[3] that "[i]t is my contention that when Ms. Baker learned that I had filed another Charge of Discrimination with the EEOC relative to the issue of the bucket truck reassignment, she decided to retaliate." (Docket No. 48-1).

F.      *Plaintiff's Present Employment*

Plaintiff remains employed by Verizon and since January 1, 2002, she "has taken FMLA leave on more than 400 days." (Docket No. 35 at ¶ 27, 28; Docket No. 39 at ¶ 27, 28).  The parties

---

[3]

*See* n. 2 *supra*.

dispute whether Plaintiff's wages and benefits have been reduced as a result of her reclassification as a Maintenance Administrator. However, this dispute is not material to the Court's decision on Defendant's motion for summary judgment.[4]

## III.   PROCEDURAL HISTORY

Plaintiff commenced this action by filing her Complaint on February 10, 2009. (Docket No. 1). She initially brought claims against Defendant and Susan Baker, one of Defendant's employees, alleging: (1) disparate treatment on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) the existence of a hostile work environment in violation of Title VII; (3) retaliation in violation of the FMLA; (4) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); and, (5) violations of the Pennsylvania Human Relations Act ("PHRC"). (*Id*.).

Plaintiff failed to serve Susan Baker with her Complaint within 120 days as required under Rule 4(m) of the Federal Rules of Civil Procedure, and then failed to respond to the Court's Show

---

[4]

The Court notes that during her deposition, Plaintiff testified that she was receiving workers' compensation benefits to supplement her income and had no actual wage loss at that time. (Docket No. 49-1). She further testified that the number of overtime hours permitted in the Maintenance Administrator position were limited, while there were no restrictions to the number of overtime hours that a Cable Splicer could work. (*Id*.). She explained that she used 12 weeks of FMLA leave and six weeks of vacation in 2009, but still managed to work 329 hours of overtime in that year. (*Id*.). She also was not able to estimate the amount of overtime she allegedly was unable to work or "missed out on" in 2007 or 2008. (*Id*.). In her unsigned and unsworn affidavit, Plaintiff contradicts much of this testimony, stating that in the Maintenance Administrator position, her pay was reduced in $10 increments each month and that her present salary is much less than what she earned prior to the reclassification. (Docket No. 48-1). Given that these facts are set forth in an unsworn affidavit, even if they were material, the Court will not consider same as creating a genuine issue of material fact. *See* n. 2 *supra*.

Cause Order directing her to show cause why service was not made within the applicable time period, therefore, her claims against Ms. Baker were dismissed on June 11, 2009. (Docket Nos. 10, 11). Defendant also moved to dismiss Plaintiff's disparate treatment, hostile work environment, and disability discrimination claims, arguing that said claims should be dismissed due to Plaintiff's failure to file said claims within 90 days of receiving a right to sue notice from the Equal Employment Opportunity Commission ("EEOC"). (Docket Nos. 6, 7). Plaintiff again did not respond to Defendant's motion, which was granted by the Court on June 30, 2009, and said claims were dismissed, with prejudice.[5] (Docket No. 13). Finally, pursuant to a stipulation by the parties, Plaintiff's PHRC claim was dismissed, with prejudice, on November 20, 2009. (Docket Nos. 29, 30).

The parties then completed discovery on Plaintiff's remaining claim, FMLA retaliation. Defendant filed its Motion for Summary Judgment, Brief in Support, Concise Statement of Material Facts, and Appendix on January 11, 2010. (Docket Nos. 33-37). Plaintiff filed her Brief in Opposition to Defendant's Motion for Summary Judgment and Response to Defendant's Concise Statement of Undisputed Material Facts on February 22, 2010. (Docket Nos. 38-39). On February 24, 2010, she filed her Appendix.[6] (Docket No. 40). Thereafter, on March 8, 2010, Defendant filed

---

[5]

Plaintiff did not seek reconsideration of the dismissal of these claims, and, to date, has not contested that they were properly dismissed as time-barred.

[6]

Defendant filed a motion to strike Plaintiff's appendix on February 24, 2010, arguing that it was not timely filed and noting that Plaintiff's counsel had misrepresented to the Court that she had received consent from defense counsel prior to filing an earlier motion for an extension of time. (Docket No. 41). The Court ordered that Plaintiff respond to the motion to strike, and Plaintiff filed her response on March 3, 2010. (Docket No. 42). After considering the parties' positions, the Court denied the motion to strike, but admonished Plaintiff's counsel for her misrepresentations to the Court. (Docket No. 43).

its Reply Brief and Response to Plaintiff's Concise Counter Statement of Undisputed Material Facts. (Docket Nos. 44, 45).

The Court held a motion hearing on April 15, 2010 during which it heard oral argument from counsel as to Defendant's motion. (Docket Nos. 47, 50). The parties then submitted supplemental briefs and evidence regarding a discrepancy as to the factual record. Plaintiff's supplemental brief and supporting evidentiary materials, including an unsigned and unsworn "affidavit" by Plaintiff, were filed on April 21, 2010 (Docket No. 48) and Defendant's supplemental brief and supporting evidentiary materials were submitted on April 30, 2010 (Docket No. 49). As the parties' supplemental briefs have been received, Defendant's motion is fully briefed and ripe for disposition.

## IV. LEGAL STANDARD

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248 (1986).

In determining whether the dispute is genuine, the court's function is not to weigh the

evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 413 F.3d at 363; *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir.1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir.1994)). In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir.2007). As to materiality, the relevant substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## V.    DISCUSSION

"The FMLA was enacted by Congress in 1993, in part to address problems arising from 'inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods.'" *Seifert v. Comm. of PA Human Relations Com'n*, 515 F.Supp.2d 601, 610 (W.D.Pa. 2007)(quoting 29 U.S.C. § 2601(b)(1)), *aff'd on other grounds*, 301 Fed.Appx. 194 (3d Cir. 2008)(not precedential).   "The act was designed to provide a balance between 'entitl[ing] employees to take reasonable leave for medical reasons' and 'accommodat[ing] the legitimate interests of employers.'" *Seifert*, 515 F.Supp.2d at 610 (quoting 29 U.S.C. §§ 2601(b)(1-2)).  Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" because of, among other reasons, "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  An employee who returns from FMLA leave is "to be restored by the

employer to the position of employment held by the employee when the leave commenced" or "to be restored to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 U.S.C. §§ 2614(a)(1)(A)-(B).

The FMLA authorizes an employee to file a civil action seeking money damages and equitable relief against her employer in order to enforce these rights. 29 U.S.C. § 2617. In this action, Plaintiff has advanced a retaliation claim under 29 U.S.C. § 2615(a)(2), which provides that: "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). The FMLA Regulations further explain that:

> The Act's prohibition against "interference" prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c). In order to demonstrate retaliation, an employee must show that (1) she "invoke[d] FMLA rights"; (2) she suffered an adverse employment decision; and, (3) the adverse employment decision was causally related to the invocation of FMLA rights. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508-09 (3d Cir. 2009); *see also Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004)(an employee "must show that (1) he took an FMLA leave, (2) [she] suffered an adverse employment decision, and (3) the adverse decision was causally related to [her] leave.").

In her Complaint, Plaintiff identifies the following adverse employment actions as the bases for her retaliation claim: (1) she was assigned a van rather than a bucket truck upon her return from FMLA leave in 2002; (2) she was again assigned a van rather than a bucket truck upon her return from FMLA leave in 2006;[7] and, (3) she was reclassified from a Cable Splicer to a Maintenance Administrator position after her return from FMLA leave in May of 2007. (Docket No. 1).

A.    *FMLA Statute of Limitations*

In its motion for summary judgment, Defendant argues that the alleged adverse employment actions regarding its assignment of a van rather than a bucket truck to Plaintiff, which occurred in 2002 and 2006, are barred by the two-year statute of limitations applied to FMLA actions. (Docket No. 34). Plaintiff concedes that her claims regarding the bucket truck reassignments in 2002 and 2006 were filed outside the applicable statute of limitations under 29 U.S.C. § 2617(c)(1).[8] (Docket No. 38 at 4; Docket No. 48 at 1-2). She also admits that she has not alleged that Defendant engaged in any willful violations of the FMLA, thereby implicitly agreeing that her claims are not governed by the three year statute of limitations under 29 U.S.C. § 2617(c)(2).[9] (*Id.*). Therefore, given Plaintiff's concessions and considering that she filed this action on February 10, 2009 (Docket No. 1), to the extent that she has set forth discrete claims of retaliation arising from Defendant's

---

[7]

*See* n. 1 *supra*.

[8]

Section 2617(c)(1) provides that "an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1).

[9]

For actions brought for a willful violation of section 2615, "such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C. § 2617(c)(2).

assigning her a work van rather than a bucket truck upon her return from FMLA leave in 2002, or 2006, said claims are time-barred and Defendant is entitled to summary judgment as to these claims. However, to the extent that Plaintiff argues that these incidents "shed light" on her retaliation claim arising from the reclassification of her position with Defendant from a Cable Splicer to a Maintenance Administrator, a claim which is not barred by the statute of limitations, the Court will address the same below.

B.      *FMLA Retaliation*

FMLA retaliation claims are analyzed under the legal framework established for Title VII claims. *Wilson v. Lemington Home for the Aged*, 159 F.Supp.2d 186, 194 (W.D.Pa. 2001); *Pinson v. Berkley Medical Resources, Inc.*, Civ. A. No. 03-1255, 2005 WL 3210950, at *18 (W.D.Pa. Jun. 21, 2005). "Thus, a plaintiff may prove FMLA retaliation by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) or indirectly through the burden shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Wilson*, 159 F.Supp.2d at 194-95. Plaintiff has not presented any direct evidence of retaliation, making the *McDonnell Douglas* burden shifting analysis applicable in this action.

"Under this scheme: (1) plaintiff bears the burden of establishing a prima facie case of discrimination; (2) the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; and (3) if defendant meets its burden of production, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination." *Parker v. Verizon PA, Inc.*, Civ. A. No. 07-435, 2007 WL 4248277, at *7 (W.D.Pa. 2007), *aff'd*, 309 Fed.Appx. 551 (3d Cir. 2009).

As to Plaintiff's claim arising from the reclassification of her position from Cable Splicer to Maintenance Administrator, Defendant maintains that she has failed to present sufficient evidence to either support a prima facie case of retaliation or, alternatively, to demonstrate pretext. (Docket No. 34). Plaintiff contends otherwise, arguing that she has presented evidence in support of a prima facie case of retaliation and pretext. (Docket No. 38).

          1.      <u>Prima Facie Case</u>

Defendant first attacks Plaintiff's prima facie case, arguing that she has failed to present any evidence which demonstrates that its reclassification of her position from a Cable Splicer to a Maintenance Administrator was causally related to her taking FMLA leave. (Docket No. 34 at 14). Plaintiff contends that the timing between her exercise of FMLA rights and the reclassification is unduly or unusually suggestive and supports causation. (Docket No. 38). She further argues that she has presented sufficient circumstantial evidence of ongoing antagonism by Defendant toward her and/or that Defendant proffered inconsistent reasons for its actions related to its assigning her a van rather than a bucket truck when she returned from FMLA leaves in 2002 and 2006. (*Id.*). Finally, she submits that her filing of an EEOC Charge in February of 2007 against Defendant also supports causation.

The United States Court of Appeals for the Third Circuit has held that "[w]here the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment." *LeBoon*, 503 F.3d at 223 (citing *Clark County Sch. Dis. v. Breeden*, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)). In this Court's estimation, the timing between Plaintiff's return from FMLA leave in January of 2007 and the

adverse employment action taken in May of 2007 is not unusually or unduly suggestive. The Court

of Appeals has recognized that "[a]lthough there is no bright line rule as to what constitutes unduly

suggestive temporal proximity, a gap of three months between the protected activity and the adverse

action, without more, cannot create an inference of causation and defeat summary judgment."

*LeBoon*, 503 F.3d at 223. Following this line of reasoning, the five-month period at issue in this case

is not enough, without more, to demonstrate a causal connection sufficient to support Plaintiff's

prima facie case.

    In instances where timing is not unduly or unusually suggestive this Court is to consider

whether "the proffered evidence, looked at as a whole, may suffice to raise the inference" of

causation. *Farrell*, 206 F.3d at 280. "Among the kinds of evidence that a plaintiff can proffer are

intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons

for [the adverse action], or any other evidence in the record sufficient to support the inference of

retaliatory animus." *LeBoon*, 503 F.3d at 232-33.

    Having viewed the record evidence as a whole, the Court finds that the record is devoid of

any evidence supporting a causal inference that the May 2007 decision was made by Defendant as

retaliation for her having invoked her rights under FMLA. Plaintiff returned to work from taking

FMLA leave in January of 2007. (Docket No. 35 at ¶ 21; Docket No. 39 at ¶ 21). Upon her return,

she was given her same position, Cable Splicer, with the same pay and benefits as she had prior to

her leave. (Docket No. 36-1, Pl. Depo. at 114). However, she was medically restricted and

permitted to engage in only light duty work, which did not permit her to climb poles, thus, she was

unable to perform one of the essential functions of a Cable Splicer. (Docket No. at 39 at ¶¶ 56, 60;

Docket No. 45 at ¶¶ 56, 60; Docket No. 36-1, Pl. Depo at 159-60). At the time of her

reclassification, May of 2007, Plaintiff admits that she was still not physically able to perform the Cable Splicer job duties and that she refused to complete the required pole climbing certification due to her belief that she was "too fat" to pole climb and that it was "unsafe" for her to do so. (Docket No. 35 at ¶¶ 21-4; Docket No. 39 at ¶¶ 21-4, Docket No. 36-1, Pl. Depo at 103-04, 159-160). As a result, even if Defendant had a bucket truck to assign her, Plaintiff could not use it because of her medical restrictions and her unilateral refusal to submit to pole climbing certification.

Plaintiff attempts to argue that she has set forth evidence of a "pattern of ongoing antagonism" related to Defendant assigning her a van rather than a bucket truck in 2002 and 2006. (Docket No. 38). She also relies on evidence of inconsistent reasons proffered by Defendant for making the bucket truck-related decisions to support causation. (*Id*.). Neither argument requires much consideration.

The United States Court of Appeals for the Third Circuit has recognized that a pattern of ongoing antagonism is relevant to causation only if it is "intervening," meaning that the pattern occurred between the protected act and the adverse employment decision. *LeBoon*, 503 F.3d at 232-33; *see Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997) ("a plaintiff can establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism *in the intervening period*.")(emphasis added). The bucket truck issues all occurred prior to Plaintiff returning to work in January of 2007, and, after she returned, she was not able to use a bucket truck even if one were available, because she was medically restricted from performing the duties of a cable splicer and refused to take the required pole climbing test. *See Seifert*, 515 F.Supp.2d at 616 (stating that "while ineptitude and hostility may have existed with respect to plaintiff in the work place, the ineptitude and hostility predated her request for FMLA

leave."). Therefore, the fact that she was not assigned a bucket truck or that Baker advised her that there was no bucket truck available for her use, at that time, does not support her prima facie case.

The Court of Appeals has also held that inconsistent reasons given by an employer for making an adverse employment decision may bear on whether a causal inference can be made between the protected activity and the adverse decision. *LeBoon*, 503 F.3d at 232-33. However, Plaintiff cites no authority for her contention that inconsistent decision-making regarding alleged adverse actions which occurred *prior* to her taking and returning from FMLA leave (her claimed protected activity) supports causation between her taking FMLA leave and the reclassification of her position. Moreover, the Court fails to see how any alleged inconsistent reasons given by Defendant when it did not assign Plaintiff a bucket truck in 2002 and 2006 support a causal inference between her return to work from FMLA leave in January of 2007 and the reclassification of her position in May of 2007. Further, to the extent that Plaintiff argues that she was not provided with any reason for the reclassification in May of 2007, this argument is belied by the record, wherein Plaintiff admits that she had not passed required pole climbing testing, and, therefore, could not perform the duties of a Cable Splicer. (Docket No. 36-1, Pl. Depo at 159-60).

Plaintiff also contends that causation in her FMLA retaliation case can be demonstrated by virtue of her filing an EEOC charge against Defendant alleging violations of Title VII and the ADA on February 2, 2007 (between her return to work in January of 2007 and the adverse employment action in May of 2007). The EEOC charge reads, in pertinent part:

> I believe [Verizon] discriminated against me because of my gender, female; my disabilities and/or in retaliation for having filed both internal and external (EEOC) charges of discrimination against [Verizon] in violation of Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990. In that,

> during my absence Sue Baker "stripped" my bucket truck of my tools and personal belongings and assigned it to a lower classified employee. I also had my company cell phone shut off. Males who report to Ms. Baker who have been off have not had their bucket trucks taken away or their cell phones removed. These individuals include, but are not limited to: Ken Morgan, Dave Zelhart, Larry Nelson and Kevin Carter. Individuals in my job classification are supposed to work from bucket trucks and not vans/ladders. In addition, Larry Dwojack, has had numerous accidents with his truck, but has not had his bucket truck taken from him.

(Docket No. 36-6, *EEOC Charge dated 2-2-07*, at 2). In this Court's estimation, the EEOC charge is not probative of causation as to Plaintiff's FMLA retaliation claim. The EEOC Charge does not claim any FMLA violations but specifically references only gender and disability discrimination, and retaliation for filing internal and external EEOC charges against Defendant. (*Id*.). Further, the timing between Plaintiff's filing of the EEOC Charge on February 2, 2007–four months prior to the alleged adverse action in May of 2007–is not unusually suggestive given the circumstances and in light of the above analysis.

In sum, viewing the record in the light most favorable to Plaintiff and drawing all inferences in her favor, Plaintiff has not met her burden of production which requires her to present evidence sufficient to establish a prima facie case of FMLA retaliation. Specifically, she has not presented any evidence which demonstrates that Defendant's reclassification of her position from a Cable Splicer to a Maintenance Administrator in May of 2007 was causally related to her taking FMLA leave from which she returned in January of 2007. Accordingly, Defendant's motion for summary judgment as to this claim is granted.

### 2. Legitimate Nondiscriminatory Reason

As Plaintiff has failed to meet her burden of production, the burden of production does not

shift to Defendant to proffer a legitimate nondiscriminatory reason for its decision to reclassify Plaintiff's position. However, in the interest of completeness, the Court will continue its analysis.

The burden placed on an employer to articulate a legitimate nondiscriminatory reason for its employment action is "relatively light." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes*, 32 F.3d at 763. In this Court's estimation, Defendant has proffered a legitimate nondiscriminatory reason for reclassifying Plaintiff's position, i.e., Plaintiff was reassigned because she had not passed required pole climbing certification and was not medically cleared to perform the duties of the Cable Splicer position. Plaintiff has not argued otherwise. Therefore, even if Plaintiff had met her initial burden, Defendant would be able to meet its burden of production.

### 3.    Pretext

In order to overcome Defendant's proffered legitimate nondiscriminatory reason for its action, the burden shifts to Plaintiff to prove by a preponderance of the evidence that such action was a pretext for discrimination. To meet her burden, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. Further, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons, [...] was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id*. (internal citations omitted).

Plaintiff contends that the following supports her position that Defendant's action was pretextual: (1) evidence of a pattern of ongoing antagonism due to the bucket truck incidents; (2) that Defendant did not give her a reason for its employment action; and (3) that Defendant violated its own policy in making its decision. (Docket No. 38). The Court has already addressed Plaintiff's arguments regarding an alleged pattern of ongoing antagonism and her contention that she was not given a reason for the decision to reclassify her position in conjunction with the discussion as to Plaintiff's prima facie case. For the same reasons, these arguments do not support pretext. Plaintiff's argument as to the alleged policy violation by Defendant also fails. The policy at issue provides, in relevant part, that:

> The supervisor will meet with the employee as soon as possible after receiving notification or confirmation of the restriction from MetLife and explain to him/her the procedures that will be followed to find the employee a suitable indefinite reassignment.
>
> The supervisor will also ask the restricted employee if there are any reasonable accommodations that s/he believes would enable him/her to perform the essential functions of the current job, and to suggest other jobs the employee believes he/she could perform with or without reasonable accommodation.

(Docket No. at 39 at ¶ 59; Docket No. 45 at ¶ 59).

Plaintiff argues that the policy was violated because she was not consulted regarding reasonable accommodations or given an opportunity to make suggestions as to jobs that she believed that she could perform. (Docket No. 38 at 8-9). Plaintiff cites to a single report authored by Ms. Baker in support of her position that this policy was violated. (Docket No. 40-12). In this Court's estimation, a detailed review of the report arguably suggests that Defendant followed its policy. The report states that Defendant provided Plaintiff with a medically restricted letter on February 27,

2007, the contents of which are not of record. (Docket No. 40-12). At some point thereafter, Plaintiff successfully took two tests (UTB-R and CART-M), which qualified her for the Maintenance Administrator position.[10] (*Id*.). A meeting was held on May 8, 2007 between Plaintiff, her union representative, Plaintiff's supervisor, Baker and Mark Mihalko, during which Plaintiff's medical restrictions and her placement in a new position were discussed. (*Id*.). Plaintiff was advised that she would be reclassified as a Maintenance Administrator at that time. (*Id*.). Mihalko believed that the placement was done in accordance with the company policy. (*Id*.). As Plaintiff was notified of the medical restrictions by Defendant in a February letter, took placement exams for other positions at some point thereafter, qualifying her for the Maintenance Administrator position, and then was given a conference with representatives of Defendant and her union on said matters in May, it appears that the policy was largely adhered to by Defendant.

Moreover, even if the policy was violated as Plaintiff suggests, evidence of a company's policy violation alone, without any proof of discriminatory animus, is not sufficient for Plaintiff to meet her burden to present evidence of pretext at this stage. Our Court of Appeals has held that "[t]o discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765. Plaintiff has not set forth any evidence which would discredit Defendant's legitimate nondiscriminatory reason for reclassifying Plaintiff as a

---

[10]

The Court notes that, even if considered, Plaintiff's unsworn statements in her "affidavit" that she was unaware that she was sent to Defendant's Pittsburgh office to take these exams would not change this Court's analysis. (*See* Docket No. 48-1).

Maintenance Administrator.  Indeed, she admits that she was not medically cleared to perform the functions of a Cable Splicer and that she refused to become recertified in pole climbing, despite a clear company policy which required her to do so prior to her returning to her prior work as a Cable Splicer.  (Docket No. 35 at ¶¶ 21-4; Docket No. 39 at ¶¶ 21-4; Docket No. at 39 at ¶¶ 56, 60; Docket No. 45 at ¶¶ 56, 60; Docket No. 36-1, Pl. Depo at 103-04, 159-160). Although she has presented some evidence and an unsworn statement that she would be "coming off medical restrictions" on May 25, 2007, she has presented no evidence that she was willing or able to become recertified in pole climbing.[11]  (*See* Docket No. 40-12, 48-1).  Therefore, even if Plaintiff had met her initial burden to establish a prima facie case, she has not met her burden to demonstrate that Defendant's proffered legitimate nondiscriminatory reason was merely a pretext for discrimination.  Accordingly, Defendant's motion for summary judgment as to her remaining FMLA retaliation claim is granted.

## VI.    CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment [33] is granted.  An appropriate order follows.


*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


Dated:  May 20, 2010

cc/ecf:  All counsel of record

---

[11]

*See* discussion at n. 2 *supra*.